**LITKOFSKY et al. v. UNITED STATES.**

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

No. 87.

**1. Criminal law ⬤=535(2)—Where defendants confessed to throwing plates in river, claim of failure to show corpus delicti not sustained.**

In prosecution for counterfeiting, making counterfeit plates, and for conspiracy to violate Criminal Code, § 150 (Comp. St. § 10320), though plates were never seen by government agents and were not produced, defendants' confessions that they were thrown into river *held* sufficient proof of corpus delicti, when corroborated.

**2. Conspiracy ⬤=48—Counterfeiting ⬤=19—Whether plates were like genuine for jury.**

In prosecution for counterfeiting and for conspiracy, whether plates and prints were like genuine plates and prints of United States obligations *held* for jury.

**3. Criminal law ⬤=1144(14)—Where no request for instruction, instruction given assumed to have been satisfactory.**

Where there is no request for an instruction on a particular issue, appellants are assumed to have been satisfied with instructions given.

**4. Conspiracy ⬤=47—Counterfeiting ⬤=18—Evidence held sufficient to justify finding of possession of counterfeit plates and use with intent to defraud.**

In prosecution for counterfeiting and for conspiracy to violate Criminal Code, § 150 (Comp. St. § 10320), where, in addition to confessions, admissions were made to government agents of existence of counterfeit plates and samples therefrom, finding that defendants possessed counterfeit plates, which they could and did use with intent to defraud, were warranted.

**5. Criminal law ⬤=781(5)—Admission of confessions alleged to have been obtained by duress held not error.**

Admission of confessions alleged to have been obtained by duress and threats, which was denied by government agents, under proper instructions, *held* not error.

**6. Criminal law ⬤=535(2)—Evidence held to show sufficient corroboration touching corpus delicti.**

In prosecution for counterfeiting and for conspiracy to violate Criminal Code, § 150 (Comp. St. § 10320), corroboration of confessions as to the corpus delicti *held* sufficient.

**7. Criminal law ⬤=530—Oral testimony of confessions not error, where supplemented by written statement.**

Admission of oral testimony of contents of defendants' confessions was not error, where supplemented later by written statements.

**8. Criminal law ⬤=531(1)—Instruction putting burden on government to show confessions were obtained without duress held proper.**

Instruction that government had burden of establishing absence of duress in obtaining confessions *held* proper.

**9. Criminal law ⬤=747—Conflicting evidence for jury.**

Where evidence is conflicting, it is for the jury.

**10. Indictment and information ⬤=129(3), 132(5)—Counts charging counterfeiting and conspiracy held not misjoined, and election was unnecessary.**

Counts charging counterfeiting, making of counterfeit plates, and conspiracy to violate

Criminal Code, § 150 (Comp. St. § 10320), in one indictment, *held* not misjoined, and hence court properly refused to require government to elect.

**11. Conspiracy ⚙=47—Evidence held sufficient to show conspiracy to violate counterfeiting law.**

Evidence *held* sufficient to show conspiracy to violate Criminal Code, § 150 (Comp. St. § 10320), against counterfeiting.

In Error to the District Court of the United States for the Southern District of New York.

Isidor Litkofsky, Joseph Schlossberg, and Samuel Streim, impleaded with Rosario Mezzasalma, Tony Spampinato, and Dante Sirignano, were convicted of violating Criminal Code, § 150 (Comp. St. § 10320), and conspiracy to violate the same section, and they bring error. Affirmed.

Bernard H. Sandler, of New York City (Ira Wollison, of New York City, of counsel), for plaintiffs in error Litkofsky, Schlossberg and Streim.

Caesar B. F. Barra and Samuel M. Hitchcock, both of New York City (Ralph J. Barra, of New York City, of counsel), for plaintiffs in error Mezzasalma, Spampinato and Sirignano.

Emory R. Buckner, U. S. Atty., of New York City (John M. Blake, of Belle Harbor, N. Y., and Ben Herzberg, of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The plaintiffs in error were convicted on counts second, third and fourth of the indictment. The second count charged unlawful possession of "three falsely made and counterfeited plates made in the similitude of plates from which an obligation of the United States has been printed, with intent to use and suffer the same to be used in counterfeiting such obligation; that is to say, a plate of the front, a plate of the back, and a plate of the seal of the Treasurer of the United States, all made in the similitude of plates from which a five-dollar Federal Reserve Bank note of the Federal Reserve Bank of the City of New York has been printed." The third count charged that the plaintiffs in error, "with intent to defraud, did cause to be printed parts of an obligation of the United States; that is to say, three impressions in the likeness of a five-dollar Federal Reserve Bank note, * * * an impression of the face, an impression of the back and

an impression of the seal of the Treasurer of the United States." The fourth count alleges a conspiracy to violate section 150 of the United States Criminal Code (Comp. St. § 10320); the conspiracy consisting of possessing the plates with the intention to print impressions or to sell the plates.

The government employed, in its Secret Service, an agent of Italian birth or extraction, to run down counterfeiting operations. On December 10, 1922, he met the plaintiff in error Litkofsky and represented that he had a purchaser for counterfeit notes and plates. Litkofsky stated he had a five-dollar plate on hand and promised to give the agent proofs from this plate to show his customer. This he did on December 13th and he stated that, if the purchaser was satisfied, he would deliver a plate used for five-dollar bills. The next day the agent said the proofs were satisfactory and arranged for a meeting for December 16th to effect the purchase of the plates. On that evening, with two other Secret Service agents, he met the plaintiff in error Streim, who told him that he would arrange by telephone to bring the plates over. He then telephoned. He asked that the money be paid to him, stating that the owner of the plates did not want to be known, and assured the government agents that they would get the plates. He stated that they were getting exactly what they had seen in the proofs. The money was refused that night. Streim came to the government agent to say that the owner of the plates could not deliver them that night and asked that the purchase go over until the next day. Schlossberg and Streim were nearby and were assisting in the negotiations with the owner of the plates. The next day the government agents met Streim and Litkofsky by appointment. They were then assured that the plates were "on the way over" and would be there within an hour. Litkofsky, Streim and Schlossberg had conferences and later in the afternoon Streim announced that the deal was off for that day. That evening, the Secret Service agents met all of the plaintiffs in error, except Litkofsky, at the place appointed for the sale. The next day Streim announced that the deal was off because his friend feared the Secret Service agents were in the neighborhood, and refused to deliver them. Litkofsky was then arrested and confronted with the government agent who pretended to be acting for a purchaser. He thereupon identified his fellow plaintiffs in error and offered to assist the agents in apprehending them. On January 8, 1923,

with Litkofsky showing the way, the agents found the plaintiffs in error Mezzasalma, Spampinato and Sirignano, at the place Litkofsky fixed upon for the sale of the plates. Thereupon Sirignano and Spampinato immediately left in a taxicab. Upon returning, Spampinato rejoined Mezzasalma and Litkofsky, and it is stated by one that "Sirignano ran out on us"; he got out of the taxicab and ran away. This seems to have prevented the sale of the plates. The government agents then took the plaintiffs in error into custody. Litkofsky, Schlossberg, Streim and Sirignano confessed their part in the crimes and each told about the same story. Mezzasalma and Spampinato, who had the plates in the first instance, substantiated the confessions of the other plaintiffs in error. The confessions were in effect that Litkofsky approached one Rudolph to get counterfeit money and through Rudolph met Sirignano. The latter did not have the denominations Litkofsky wanted and a few months later, after one of the government agents told him he had a purchaser for a five-dollar plate, Litkofsky again saw Sirignano and also spoke to Schlossberg to urge Sirignano to get in touch with the men who had the plates. This he did. Mezzasalma and Spampinato held out for a thousand dollars for the plates. They stated that one evening Mezzasalma, Spampinato, Schlossberg and Sirignano brought the plates to the Print Craft Press, where Litkofsky was working and where they struck off the proofs. Then Litkofsky said he gave the proofs to the government agent as the government witness testified; that the purchase price of $2,600 was to be divided among the plaintiffs in error. They confessed as to the appointments made and what transpired, as related by the government witnesses as above stated. It was admitted that Spampinato and Mezzasalma had the plates with them at the time of one of these meetings, but concealed that fact from the other plaintiffs in error, saying that they wanted to make sure of the purchaser before they brought the plates. They admitted that on January 8, 1923, when arrested, the plaintiffs in error Spampinato, Sirignano, Mezzasalma and Litkofsky met to sell the plates to the purchaser Litkofsky told them he had. Sirignano went with Spampinato to his home in Long Island City, where Spampinato had the plates. Spampinato said that he went home, got the plates, and gave them to a boy whom he picked up as he drove back to the place where the other plaintiffs in error were waiting for him that evening. He said

he left the plates with the boy and went to rejoin the others. He admitted that at this point they became alarmed and scattered. Spampinato said he threw the plates into the river and they were never found, although search was made where Spampinato said he dropped them. Mezzasalma said that he did not have the plates, but that he and Spampinato were trying to pawn off pieces of metal for plates. He did, however, admit that he had plates at the time the impressions were struck off.

At the trial, some of the plaintiffs in error said they were forced to make the confessions they did because they were subject to physical violence and threats. Spampinato and Mezzasalma stated that the government agents beat them, and Spampinato claimed that one of the agents asserted that he would not let his (Spampinato's) wife leave the building until he said what he wanted. This conduct on the part of the government agents was denied by each of them. There was testimony that the plaintiffs in error were told at the time they made their confessions that such confessions would be used against them.

[1-3] This evidence was submitted to the jury under a charge which we find to be free from error and to which no exception was taken. However, many errors have been assigned, the principal one of which is that on this evidence the court should have directed that the plaintiffs in error be found not guilty. This argument is based upon the claim that there was insufficient proof and the failure of the government to prove the corpus delicti; the theory of the latter being that the plates were never seen by the government agents and were not produced at the trial. The answer to this is that, as the plaintiffs in error have confessed, the plates were thrown into the river. It is argued that the prints were so poorly made that they were not a likeness of the obligations of the United States. Under the facts and under the charge, it was for the jury to decide if the plates and prints were like genuine plates and prints. There was no request for an instruction as to this issue, and we must assume that the plaintiffs in error were satisfied with the court's instructions to the jury. Storgard v. France & Canada S. S. Corp. (C. C. A.) 263 F. 545.

[4] In addition to the confessions of the plaintiffs in error, there is corroboration by admissions made to the government agents of the existence of the plates and samples of the work turned out by the plates. This testimony justified the jury in finding that

there were plates in the possession of the plaintiffs in error as charged in count second of the indictment, and which they could and did use with intent to defraud in printing parts of an obligation of the United States as charged in count third of the indictment.

[5, 6] Error is charged in the admission in evidence of confessions made by the plaintiffs in error. The claim advanced by the plaintiffs in error who made confessions is that they were made under duress and threats. The government agents who were charged with exercising this duress and making the threats testified denying these charges, and the learned District Judge submitted this issue to the jury on a charge which fully stated the law on the subject. There was ample evidence of corroboration of such confessions. Bolland v. United States, 238 F. 529, 151 C. C. A. 465, Ann. Cas. 1918B, 520; Cohen v. United States (C. C. A.) 288 F. 835. The statements of the existence of the plates made by the plaintiffs in error, the production of the samples of impressions made, and the promise to produce the plates at the time of the purchase, is ample corroboration which touches the corpus delicti. There is also corroborative evidence in the assembly of the men and the part each took as above narrated, not only in the substantive offense, but in the conspiracy charge in the fourth count. The rule that the corpus delicti must be proven, independent of confessions, is satisfied by the circumstantial proof. Wigmore on Evidence, § 2081, p. 428. The actual production of the plates at the trial was impossible, because admittedly they were thrown away.

[7-9] It is argued that the court committed error in permitting one of the government's witnesses to state orally the contents of confessions made by the plaintiffs in error. This was supplemented later by written statements. This was permissible. Ingram v. United States (C. C. A.) 5 F.(2d) 940; Wigmore on Evidence, § 18, p. 185. The trial judge properly instructed the jury that the burden was on the government to establish the absence of duress in obtaining the confessions. Wilson v. United States, 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090. And where the evidence is conflicting, as here, it is for the jury. Hopt v. Utah, 110 U. S. 574, 4 S. Ct. 202, 28 L. Ed. 262.

[10, 11] There is also assigned as error the refusal of the court to grant the motion of the plaintiffs in error, requiring the government to elect between the counts charging the substantive crime and the count charging

conspiracy. There was no misjoinder in placing these counts in one indictment. Ader v. United States (C. C. A.) 284 F. 13. There was ample evidence of conspiracy in the various meetings and operations of the plaintiffs in error. They were undoubtedly engaged in a conspiracy to have possession of the plates and to use or sell them, for the purpose of violating section 150 of the United States Criminal Code. We find no error in this record which justifies a reversal.

Judgment affirmed.